ROBBINS GELLER RUDMAN
  & DOWD LLP
CHRISTOPHER M. WOOD, #032977
414 Union Street, Suite 900
Nashville, TN 37219
Telephone: 615/244-2203
615/252-3798 (fax)
cwood@rgrdlaw.com

Attorneys for Plaintiff

[Additional counsel appear on signature page.]

UNITED S DISTRICT COURT

EASTERN DISTRICT OF TENNESSEE

CHATTANOOGA DIVISION

| | |
|---|---|
| ALBERTO MERELLES, Individually and on Behalf of All Others Similarly Situated, ) ) ) | Civil Action No. |
| Plaintiff, ) ) | <u>CLASS ACTION</u> |
| vs. ) ) ) | COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS |
| CBL & ASSOCIATES PROPERTIES, INC., STEPHEN D. LEBOVITZ, CHARLES B. LEBOVITZ, FARZANA KHALEEL and A. LARRY CHAPMAN, ) ) ) ) ) ) | |
| Defendants. ) ) ) | <u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Alberto Merelles ("plaintiff") alleges the following based upon the investigation of plaintiff's counsel, which included a review of securities analysts' reports, media reports, regulatory filings and reports and U.S. Securities and Exchange Commission ("SEC") filings by CBL & Associates Properties, Inc. ("CBL" or "the Company"), as well as press releases and other public statements issued by the Company. Plaintiff believes that after a reasonable opportunity for discovery substantial additional evidentiary support will exist for the allegations set forth herein.

## INTRODUCTION

1.      This is a securities class action brought on behalf of all purchasers of CBL securities from July 29, 2014 through March 26, 2019 (the "Class Period") against CBL and certain of the Company's executive officers and/or directors seeking to pursue remedies under the Securities Exchange Act of 1934 (the "1934 Act").

2.      CBL is organized as a real estate investment trust ("REIT") through its subsidiaries. The Company owns, develops, acquires, leases, manages and operates regional shopping malls, open-air centers, outlet centers, community centers and office properties. CBL's properties are located in 26 states, primarily in the southeastern and midwestern United States.

3.      The vast majority of CBL's revenue is derived from leases with retail tenants. Such leases generally include fixed minimum rents and percentage rents based on tenants' sales volumes, as well as reimbursements from tenants for expenditures related to utilities, real estate taxes, insurance, common area maintenance and other recoverable operating expenses. Between fiscal year 2014 ("FY14") and fiscal year 2018 ("FY18"), tenant reimbursements made up as much as 27% of CBL's revenue on an annual basis.

4.      Beginning in 2005 or 2006, defendants commenced a scheme to inflate CBL's tenant reimbursements and revenues by unlawfully overcharging the Company's retail tenants for

electricity.  Most tenants at malls CBL managed signed a form lease agreement providing that: "Tenant shall not be charged more than the rates it would be charged for the same [electric] services if furnished directly to the Leased Premises by the Local Utility Company . . . ."  A rider to the lease provides for the calculation of electricity charges and again provides that the rate "shall not exceed the rate (including taxes) which Tenant as the operator of a separately metered and billable facility would otherwise pay . . . had Tenant purchased such electricity directly from the Local Utility Company."

5.     Notwithstanding these lease provisions, CBL conspired with a third-party company, Valquest Systems, Inc., to inflate CBL's tenants' electricity usage and to charge those tenants more for that usage than CBL actually paid.  Both CBL and Valquest *knew* this scheme exposed the Company to legal liabilities and reputational damage and attempted to avoid discovery of their scheme by not making too high a profit, which would have aroused tenants' suspicions. In total, CBL overcharged its tenants for more than 190 million kilowatt hours ("kWh") of electricity, reaping tens of millions of dollars in illicit revenues from its unlawful scheme.

6.     At the same time, defendants made materially false and misleading statements and omissions to investors on a periodic basis throughout the Class Period by: (i) overstating the Company's tenant reimbursements, revenues and income by including unlawfully obtained profits from defendants' overbilling scheme in violation of generally accepted accounting principles ("GAAP") and SEC reporting requirements; (ii) claiming that CBL received reimbursement from tenants for operating expenses, "as provided in the lease agreements," when in fact CBL was violating these lease agreements by systematically overcharging its tenants; and (iii) failing to disclose the material liability and reputational harm it faced as a result of this scheme.

7.     To make matters worse for investors, when CBL was sued by a Florida hair salon in a class action lawsuit alleging RICO violations and seeking damages as a result of these unlawful

practices, CBL failed to disclose the lawsuit, and its likely liability, to investors for years. *See Wave Lengths Hair Salons of Fla., Inc. v. CBL & Assocs. Props.*, *Inc.*, No. 2:16-cv-00206-PAM-MRM (M.D. Fla.) (the "RICO Class Action"). Indeed, as late as November 2018, CBL assured investors that "[w]e are currently involved in certain litigation that arises in the ordinary course of business, most of which is expected to be covered by liability insurance. . . . [S]uch matters . . . are not expected to have a material adverse effect on our liquidity, results of operations, business or financial condition." In fact, a Delaware court had found that CBL's liability insurance carrier had no coverage obligations for the RICO Class Action over a year earlier in September 2017, and, as a result, CBL faced a substantial likelihood of liability and was mere months away from trial.

8. On March 1, 2019, just a month before the start of trial, CBL finally revealed the existence of the RICO Class Action, yet falsely claimed the lawsuit was "without merit" and unlikely to result in any losses to the Company. CBL's March 1, 2019 Form 10-K stated:

> On March 16, 2016, Wave Lengths Hair Salons of Florida, Inc. d/b/a Salon Adrian filed a putative class action in the United States District Court for the Middle District of Florida (the "Court") for unspecified monetary damages as well as costs and attorneys' fees, based on allegations that the Company and certain affiliated entities overcharged tenants at bulk metered malls for electricity. On January 7, 2019, the Court partially granted the plaintiff's motion for class certification of a nationwide RICO class and a Florida RICO and FDUTPA class. **We believe this lawsuit is without merit and are defending ourselves vigorously**. On January 22, 2019, we filed a petition seeking interlocutory review of the Court's class certification order; that petition is still pending as of the date of this report. On January 23, 2019, the Court set this matter for the trial term starting on April 1, 2019. **We have not recorded an accrual relating to this matter at this time as a loss has not been determined to be probable**. Further, we do not have sufficient information to reasonably estimate the amount or range of reasonably possible loss at this time. However, litigation is uncertain and an adverse judgment in this case could have a material adverse effect on our financial condition and results of operations. This matter is not covered by insurance.

9. While revealing the existence of the litigation, defendants' discussion of the RICO Class Action was itself materially misleading. CBL's summary judgment motion had been denied, a class had been certified, CBL had in fact estimated "the amount or range of reasonably possible

loss," and an accrual was required to be taken. As a result of this partial yet misleading disclosure, the price of CBL common stock dropped $0.16 per share, or nearly 8%, on volume of approximately 4.5 million shares.

10. On March 26, 2019, CBL issued a press release announcing the settlement of the RICO Class Action, which included the Company suspending its dividend to fund the settlement, but intentionally omitted the actual settlement amount:

> CBL PROPERTIES ANNOUNCES PROPOSED SETTLEMENT OF CLASS ACTION LAWSUIT
>
> . . . CBL Properties today announced that it has approved the structure of a settlement of a class action lawsuit as outlined below.
>
> *       *       *
>
> Proposed Settlement Structure
>
> Details of the proposed settlement structure and anticipated accounting impact are available on CBL's Form 8-K filed with the SEC today.
>
> As part of the proposed settlement, CBL will suspend payment of its common dividend for two quarters: the quarter ended June 30, 2019 (payable in third quarter 2019), and the quarter ended September 30, 2019 (payable in fourth quarter 2019). The suspension of the dividend for two quarters will preserve approximately $26.0 million in cash at the current quarterly dividend rate. Based on the current projection of taxable income for 2019, which includes the impact of the settlement, CBL believes it will satisfy all required REIT distributions for the 2019 taxable year. The proposed settlement does not restrict CBL's payment of common dividends thereafter. CBL anticipates resuming a quarterly distribution with its dividend payable in January 2020 (subject to Board approval) in an amount to be determined at that time based on updated taxable income projections for 2020. CBL's common dividend previously declared on February 25, 2019, and payable on April 16, 2019, will be paid as declared.

11. CBL's Form 8-K filed with the SEC the same day revealed that the Company had agreed to a **$90 million** common fund to resolve the RICO Class Action, which prohibited the Company from paying shareholder dividends:

> Under the terms of the proposed settlement, we are to set aside a common fund with a monetary and non-monetary value of $90 million (the "Common Fund") to be disbursed to class members in accordance with a formula to be agreed upon by the parties that is based upon aggregate damages of $60 million. . . .

Under the terms of the proposed settlement, we will not pay any dividends to holders of our common shares payable in the third and fourth quarters of 2019. The settlement does not restrict our ability to declare dividends payable in 2020 or in subsequent years.

12.     On this news, the price of CBL common stock dropped $0.47 per share, or roughly 25%, on trading volume of approximately 11.7 million shares.  CBL Series D preferred shares dropped 7%, or $0.74 per share, on volume of 576,300 shares, and CBL Series E preferred shares dropped $0.69 per share in two days on volume of 214,280 shares.

13.     Defendants' fraud caused tens of millions of dollars in harm to CBL shareholders, who relied on the accuracy of defendants' statements as reflected in the market price for CBL securities and suffered damages when the truth began to be revealed.  This action seeks to recover for those losses.

## JURISDICTION AND VENUE

14.     The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the 1934 Act [15 U.S.C. §§78j(b) and 78t(a)] and SEC Rule 10b-5 [17 C.F.R. §240.10b-5] promulgated thereunder.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and 1367 and §27 of the 1934 Act.

15.     Venue is proper in this District pursuant to 28 U.S.C. §1391(b).  A substantial number of the acts and omissions giving rise to the claims at issue occurred in this District.  CBL's corporate headquarters are in this District, and defendants are subject to personal jurisdiction in this District.

16.     In connection with the acts and omissions alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the New York Stock Exchange ("NYSE").

## PARTIES

17.     Plaintiff Alberto Merelles purchased CBL securities during the Class Period and was injured as reflected in the attached Certification.

18.     Defendant CBL is a Delaware-incorporated REIT with principal headquarters in Chattanooga, Tennessee.  The Company's common stock and Series D and E preferred shares trade on the NYSE.

19.     Defendant Stephen D. Lebovitz ("S. Lebovitz") serves as Chief Executive Officer ("CEO") of the Company and also served as President of the Company prior to June 2018.  He previously served as President and Secretary of the Company from February 1999 to January 1, 2010, when he became President and CEO, and has served as a director of the Company since the completion of its initial public offering in November 1993.  He also serves as a member of the Executive Committee of the Board of Directors.

20.     Defendant Charles B. Lebovitz ("C. Lebovitz") is the father of S. Lebovitz.  He serves as Chairman of the Board of the Company and as Chairman of the Executive Committee of the Board of Directors.  He previously served as CEO of the Company from the completion of its initial public offering in November 1993 until 2010 and also served as President of the Company until February 1999.

21.     Defendant Farzana Khaleel ("Khaleel") serves as Executive Vice President – Chief Financial Officer and Treasurer of the Company.  Khaleel served as Executive Vice President – Finance of the Company from January 2010 through September 10, 2012, when she was promoted to her current positions.  Previously, Khaleel served as Senior Vice President – Finance of the Company from September 2000 through January 1, 2010.

22.     Defendant A. Larry Chapman ("Chapman") joined the Company as a director on August 16, 2013.  Chapman is Chairman of the Audit Committee and a member of the

Compensation Committee of the Company's Board of Directors. The Audit Committee monitors the Company's SEC disclosure compliance and any related reporting risks and receives regular reports from the Company's Compliance Committee, which assists the Audit Committee in exercising certain oversight responsibilities.

23. The defendants referenced above in ¶¶19-22 are also referred to herein as the "Individual Defendants" and are liable under §§10(b) and 20(a) of the 1934 Act for CBL's fraud.

24. During the Class Period, the Individual Defendants, as senior executive officers and/or directors of CBL, were privy to confidential, proprietary information concerning CBL, its finances, operations, financial condition and present and future business prospects. The Individual Defendants also had access to material adverse non-public information concerning CBL as discussed in detail below. Because of their positions with the Company, the Individual Defendants had access to non-public information about CBL's finances, business, markets, products and present and future business prospects via internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and/or Board of Directors meetings and committees thereof, and reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

25. The Individual Defendants are liable as direct participants in the wrongs complained of herein. In addition, the Individual Defendants, by reason of their status as senior executive officers and/or directors, were "controlling persons" within the meaning of §20(a) of the 1934 Act and had the power and influence to cause the Company to engage in the unlawful conduct complained of herein. Because of their positions of control, the Individual Defendants were able to and did, directly or indirectly, control the conduct of CBL's business.

26.     The Individual Defendants, because of their positions with the Company, controlled and/or possessed the authority to control the contents of CBL's reports, press releases and presentations to securities analysts and, through them, to the investing public. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading, prior to or shortly after their issuance, and had the ability and opportunity to prevent their issuance or cause them to be corrected. Thus, the Individual Defendants had the opportunity to commit the fraudulent acts alleged herein.

27.     As senior executive officers and/or directors and as controlling persons of a publicly traded company whose stock was, and is, registered with the NYSE and governed by the federal securities laws, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with respect to CBL's financial condition and performance, growth, operations, financial statements, business, products, markets, management, earnings and present and future business prospects and to correct any previously issued statements that had become materially misleading or untrue so that the market prices of CBL securities would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

28.     The Individual Defendants are liable as participants in a fraudulent scheme and course of conduct that operated as a fraud or deceit on purchasers of CBL securities. The scheme: (a) deceived the investing public regarding CBL's business, operations and management and the intrinsic value of CBL securities; and (b) caused plaintiff and members of the Class (defined below) to purchase CBL securities at artificially inflated prices.

## DEFENDANTS' MATERIALLY FALSE AND MISLEADING STATEMENTS AND OMISSIONS

29.    Throughout and prior to the Class Period, defendants artificially inflated the trading price of CBL securities by issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, set forth below, not false and misleading.

30.    On July 29, 2014, CBL issued a release entitled "CBL & Associates Properties Reports Second Quarter 2014 results."  In the release, CBL provided its second quarter 2014 ("2Q14") financial results, including the following (in thousands):

| REVENUES: | |
|---|---|
| Tenant reimbursements | $70,774 |
| Total revenues | $256,933 |
| Net income attributable to common shareholders | $26,735 |

31.    On August 11, 2014, CBL filed its quarterly report on Form 10-Q for the three months ended June 30, 2014 with the SEC.  The 2Q14 Form 10-Q was signed by defendant Khaleel and contained certifications pursuant to the Sarbanes-Oxley Act of 2002 ("Sarbanes-Oxley") signed by defendants S. Lebovitz and Khaleel, which certified that they had reviewed the Form 10-Q and it contained no materially untrue statements or omissions, fairly represented in all material respects the financial condition of CBL, was accurate in all material respects, and disclosed any material changes to the Company's internal control over financial reporting.

32.    The 2Q14 Form 10-Q repeated the financial results provided in the 2Q14 press release.  The 2Q14 Form 10-Q also stated that "[w]e receive reimbursements from tenants for real estate taxes, insurance, common area maintenance, and other recoverable operating expenses as provided in the lease agreements.  Tenant reimbursements are recognized as revenue in the period the related operating expenses are incurred."  The 2Q14 Form 10-Q also represented that the Company's financial statements had "been prepared in accordance with [GAAP]."

33.     On October 29, 2014, CBL issued a release entitled "CBL & Associates Properties Reports Third Quarter 2014 results and Raises Full Year Guidance."  In the release, CBL provided its 3Q14 financial results, including the following (in thousands):

REVENUES:
| | |
|---|---|
| Tenant reimbursements | $71,330 |
| Total revenues | $258,714 |
| Net income attributable to common shareholders | $38,119 |

34.     The 3Q14 press release also stated that "[c]ontributions from rent growth, including increased new and renewal lease spreads, resulted in $3.0 million of growth in minimum rent and a $2.2 million increase in tenant reimbursements compared with the prior-year period."

35.     On November 10, 2014, CBL filed its quarterly report on Form 10-Q for the three months ended September 30, 2014 with the SEC.  The 3Q14 Form 10-Q was signed by defendant Khaleel and contained Sarbanes-Oxley certifications signed by defendants S. Lebovitz and Khaleel, which certified that they had reviewed the Form 10-Q and it contained no materially untrue statements or omissions, fairly represented in all material respects the financial condition of CBL, was accurate in all material respects, and disclosed any material changes to the Company's internal control over financial reporting.

36.     The 3Q14 Form 10-Q repeated the financial results provided in the 3Q14 press release.  The 3Q14 Form 10-Q also stated that "[w]e receive reimbursements from tenants for real estate taxes, insurance, common area maintenance, and other recoverable operating expenses as provided in the lease agreements.  Tenant reimbursements are recognized as revenue in the period the related operating expenses are incurred."  The 3Q14 Form 10-Q also represented that the Company's financial statements had "been prepared in accordance with [GAAP]."

37. On February 3, 2015, CBL issued a release entitled "CBL & Associates Properties Reports Results for Fourth Quarter and Full Year 2014." In the release, CBL provided its 4Q14 financial results, including the following (in thousands):

REVENUES:

| | |
|---|---|
| Tenant reimbursements | $76,239 |
| Total revenues | $283,849 |
| Net income attributable to common shareholders | $ 65,333 |

38. The 4Q14 press release also stated that "[t]op line revenue benefited from a $2.8 million increase in minimum rents and a $1.9 million increase in tenant reimbursements primarily due to contributions from double-digit lease spreads as well as an increase in other rents, including sponsorship and branding income."

39. On March 2, 2015, CBL filed its annual report on Form 10-K for the year ended December 31, 2014 with the SEC. The FY14 Form 10-K was signed by defendants C. Lebovitz, S. Lebovitz, Khaleel and Chapman. The FY14 Form 10-K contained Sarbanes-Oxley certifications signed by defendants S. Lebovitz and Khaleel, which certified that they had reviewed the Form 10-K and it contained no materially untrue statements or omissions, fairly represented in all material respects the financial condition of CBL, was accurate in all material respects, and disclosed any material changes to the Company's internal control over financial reporting.

40. The FY15 Form 10-K repeated the Company's financial results provided in the 4Q14 press release. The FY15 Form 10-K also stated that "[w]e receive reimbursements from tenants for real estate taxes, insurance, common area maintenance, and other recoverable operating expenses as provided in the lease agreements. Tenant reimbursements are recognized as revenue in the period the related operating expenses are incurred." The FY15 Form 10-K also represented that the Company's financial statements had "been prepared in accordance with GAAP."

41.     On April 28, 2015, CBL issued a release entitled "CBL & Associates Properties Reports First Quarter 2015 Results."  In the release, CBL provided its 1Q15 financial results, including the following (in thousands):

REVENUES:

| | |
|---|---|
| Tenant reimbursements | $72,133 |
| Total revenues | $260,909 |
| Net income attributable to common shareholders | $34,941 |

42.     On May 11, 2015, CBL filed its quarterly report on Form 10-Q for the three months ended March 31, 2015 with the SEC.  The 1Q15 Form 10-Q was signed by defendant Khaleel and contained Sarbanes-Oxley certifications signed by defendants S. Lebovitz and Khaleel, which certified that they had reviewed the Form 10-Q and it contained no materially untrue statements or omissions, fairly represented in all material respects the financial condition of CBL, was accurate in all material respects, and disclosed any material changes to the Company's internal control over financial reporting.

43.     The 1Q15 Form 10-Q repeated the financial results provided in the 1Q15 press release.  The 1Q15 Form 10-Q also stated that "[r]ental income and tenant reimbursements from tenant leases provide the majority of revenues from all segments."  The 1Q15 Form 10-Q also represented that the Company's financial statements had "been prepared in accordance with GAAP."

44.     On July 29, 2015, CBL issued a release entitled "CBL & Associates Properties Reports Second Quarter 2015 Results."  In the release, CBL provided its 2Q15 financial results, including the following (in thousands):

REVENUES:

| | |
|---|---|
| Tenant reimbursements | $70,224 |
| Total revenues | $253,843 |
| Net income attributable to common shareholders | $30,672 |

45.    On August 10, 2015, CBL filed its quarterly report on Form 10-Q for the three months ended June 30, 2015 with the SEC.  The 2Q15 Form 10-Q was signed by defendant Khaleel and contained Sarbanes-Oxley certifications signed by defendants Khaleel and S. Lebovitz, which certified that they had reviewed the Form 10-Q and it contained no materially untrue statements or omissions, fairly represented in all material respects the financial condition of CBL, was accurate in all material respects, and disclosed any material changes to the Company's internal control over financial reporting.

46.    The 2Q15 Form 10-Q repeated the financial results provided in the 2Q15 press release.  The 2Q15 Form 10-Q also stated that "[r]ental income and tenant reimbursements from tenant leases provide the majority of revenues from all segments."  The 2Q15 Form 10-Q also represented that the Company's financial statements had "been prepared in accordance with GAAP."

47.    On October 28, 2015, CBL issued a release entitled "CBL & Associates Properties Reports Third Quarter 2015 Results."  In the release, CBL provided its 3Q15 financial results, including the following (in thousands):

REVENUES:

| | |
|---|---|
| Tenant reimbursements | $72,461 |
| Total revenues | $262,636 |
| Net income attributable to common shareholders | $26,346 |

48.    The 3Q15 press release also stated that "[t]enant reimbursement increased by $0.8 million, offset by a $1.8 million variance in real estate tax expense and a $0.4 million increase in maintenance and repair expense."

49.    On November 9, 2015, CBL filed its quarterly report on Form 10-Q for the three months ended September 30, 2015 with the SEC.  The 3Q15 Form 10-Q was signed by defendant Khaleel and contained Sarbanes-Oxley certifications signed by defendants Khaleel and

S. Lebovitz, which certified that they had reviewed the Form 10-Q and it contained no materially untrue statements or omissions, fairly represented in all material respects the financial condition of CBL, was accurate in all material respects, and disclosed any material changes to the Company's internal control over financial reporting.

50.     The 3Q15 Form 10-Q repeated the financial results provided in the 3Q15 press release.  The 3Q15 Form 10-Q also stated that "[r]ental income and tenant reimbursements from tenant leases provide the majority of revenues from all segments."  The 3Q15 Form 10-Q also represented that the Company's financial statements had "been prepared in accordance with GAAP."

51.     On February 3, 2016, CBL issued a release entitled "CBL & Associates Properties Reports Results for Fourth Quarter and Full Year 2015."  In the release, CBL provided its 4Q15 financial results, including the following (in thousands):

REVENUES:
| | |
|---|---|
| Tenant reimbursements | $73,461 |
| Total revenues | $277,630 |
| Net income (loss) attributable to common shareholders | $(33,480) |

52.     The 3Q15 press release also stated that "[s]ame-center revenues for 2015 grew $1.5 million as compared with 2014.  Major items included: . . . a $0.6 million increase in tenant reimbursements and other revenue."

53.     On February 29, 2016, CBL filed its annual report on Form 10-K for the year ended December 31, 2015 with the SEC.  The FY15 Form 10-K was signed by defendants C. Lebovitz, S. Lebovitz, Khaleel and Chapman.  The FY15 Form 10-K contained Sarbanes-Oxley certifications signed by defendants S. Lebovitz and Khaleel, which certified that they had reviewed the Form 10-K and it contained no materially untrue statements or omissions, fairly represented in

all material respects the financial condition of CBL, was accurate in all material respects, and disclosed any material changes to the Company's internal control over financial reporting.

54. The FY15 Form 10-K repeated the Company's financial results provided in the 4Q15 press release. The FY15 Form 10-K also stated that "[w]e receive reimbursements from tenants for real estate taxes, insurance, common area maintenance, and other recoverable operating expenses as provided in the lease agreements. Tenant reimbursements are recognized as revenue in the period the related operating expenses are incurred." The FY15 Form 10-K also represented that the Company's financial statements had "been prepared in accordance with GAAP."

55. On April 27, 2016, CBL issued a release entitled "CBL & Associates Properties Reports Strong First Quarter 2016 Results." In the release, CBL provided its 1Q16 financial results, including the following (in thousands):

| REVENUES: | |
|---|---|
| Tenant reimbursements | $73,366 |
| Total revenues | $263,078 |
| Net income attributable to common shareholders | $28,851 |

56. The 1Q16 press release also stated that same-center net operating income ("NOI") results for 1Q16 had been positively impacted by "[t]enant reimbursement and other revenues," which had "increased by $1.5 million."

57. On May 10, 2016, CBL filed its quarterly report on Form 10-Q for the three months ended March 31, 2016 with the SEC. The 1Q16 Form 10-Q was signed by defendant Khaleel and contained Sarbanes-Oxley certifications signed by defendants Khaleel and S. Lebovitz, which certified that they had reviewed the Form 10-Q and it contained no materially untrue statements or omissions, fairly represented in all material respects the financial condition of CBL, was accurate in all material respects, and disclosed any material changes to the Company's internal control over financial reporting.

58.    The 1Q16 Form 10-Q repeated the financial results provided in the 1Q16 press release.  The 1Q16 Form 10-Q also stated that "[r]ental income and tenant reimbursements from tenant leases provide the majority of revenues from all segments."  The 1Q16 Form 10-Q also stated that "[w]e are currently involved in certain litigation that arises in the ordinary course of business, most of which is expected to be covered by liability insurance.  Based on current expectations, such matters, both individually and in the aggregate, are not expected to have a material adverse effect on our liquidity, results of operations, business or financial condition."  The 1Q16 Form 10-Q also represented that the Company's financial statements had "been prepared in accordance with GAAP."

59.    On July 28, 2016, CBL issued a release entitled "CBL & Associates Properties Reports Outstanding Second Quarter 2016 Results and Increases Full-Year Guidance."  In the release, CBL provided its 2Q16 financial results, including the following (in thousands):

| REVENUES: | |
| --- | --- |
| Tenant reimbursements | $70,096 |
| Total revenues | $254,965 |
| Net income attributable to common shareholders | $51,696 |

60.    The 2Q16 press release also stated that same-center NOI results for 2Q16 had been positively impacted by "[t]enant reimbursement and other revenues," which had "increased by $0.9 million."

61.    On August 9, 2016, CBL filed its quarterly report on Form 10-Q for the three months ended June 30, 2016 with the SEC.  The 2Q16 Form 10-Q was signed by defendant Khaleel and contained Sarbanes-Oxley certifications signed by defendants S. Lebovitz and Khaleel, which certified that they had reviewed the Form 10-Q and it contained no materially untrue statements or omissions, fairly represented in all material respects the financial condition of CBL, was

accurate in all material respects, and disclosed any material changes to the Company's internal control over financial reporting.

62. The 2Q16 Form 10-Q repeated the financial results provided in the 2Q16 press release. The 2Q16 Form 10-Q also stated that "[r]ental income and tenant reimbursements from tenant leases provide the majority of revenues from all segments." The 2Q16 Form 10-Q also stated that "[w]e are currently involved in certain litigation that arises in the ordinary course of business, most of which is expected to be covered by liability insurance. Based on current expectations, such matters, both individually and in the aggregate, are not expected to have a material adverse effect on our liquidity, results of operations, business or financial condition." The 2Q16 Form 10-Q also represented that the Company's financial statements had "been prepared in accordance with GAAP."

63. On October 27, 2016, CBL issued a release entitled "CBL & Associates Properties Reports Outstanding Third Quarter 2016 Results." In the release, CBL provided its 3Q16 financial results, including the following (in thousands):

| REVENUES: | |
|---|---|
| Tenant reimbursements | $69,489 |
| Total revenues | $251,721 |
| Net income (loss) attributable to common shareholders | $(10,164) |

64. On November 8, 2016, CBL filed its quarterly report on Form 10-Q for the three months ended September 30, 2016 with the SEC. The 3Q16 Form 10-Q was signed by defendant Khaleel and contained Sarbanes-Oxley certifications signed by defendants Khaleel and S. Lebovitz, which certified that they had reviewed the Form 10-Q and it contained no materially untrue statements or omissions, fairly represented in all material respects the financial condition of CBL, was accurate in all material respects, and disclosed any material changes to the Company's internal control over financial reporting.

65.     The 3Q16 Form 10-Q repeated the financial results provided in the 3Q16 press release.  The 3Q16 Form 10-Q also stated that "[r]ental income and tenant reimbursements from tenant leases provide the majority of revenues from all segments."  The 3Q16 Form 10-Q also stated that "[w]e are currently involved in certain litigation that arises in the ordinary course of business, most of which is expected to be covered by liability insurance.  Based on current expectations, such matters, both individually and in the aggregate, are not expected to have a material adverse effect on our liquidity, results of operations, business or financial condition."  The 3Q16 Form 10-Q also represented that the Company's financial statements had "been prepared in accordance with GAAP."

66.     On February 1, 2017, CBL issued a release entitled CBL & Associates Properties Reports Results for Fourth Quarter and Full-Year 2016."  In the release, CBL provided its 4Q16 financial results, including the following (in thousands):

REVENUES:
| | |
|---|---|
| Tenant reimbursements | $67,487 |
| Total revenues | $258,493 |
| Net income attributable to common shareholders | $57,607 |

67.     On March 1, 2017, CBL filed its annual report on Form 10-K for the year ended December 31, 2016 with the SEC.  The FY16 Form 10-K was signed by defendants C. Lebovitz, S. Lebovitz, Khaleel and Chapman.   The FY16 Form 10-K contained Sarbanes-Oxley certifications signed by defendants Khaleel and S. Lebovitz, which certified that they had reviewed the Form 10-K and it contained no materially untrue statements or omissions, fairly represented in all material respects the financial condition of CBL, was accurate in all material respects, and disclosed any material changes to the Company's internal control over financial reporting.

68.     The FY16 Form 10-K repeated the Company's financial results provided in the 4Q16 press release.  The FY16 Form 10-K also stated that "[w]e receive reimbursements from

tenants for real estate taxes, insurance, common area maintenance, and other recoverable operating expenses as provided in the lease agreements. Tenant reimbursements are recognized as revenue in the period the related operating expenses are incurred." The FY16 Form 10-K also stated that "[w]e are currently involved in certain litigation that arises in the ordinary course of business, most of which is expected to be covered by liability insurance. Based on current expectations, such matters, both individually and in the aggregate, are not expected to have a material adverse effect on our liquidity, results of operations, business or financial condition." The FY16 Form 10-K also represented that the Company's financial statements had "been prepared in accordance with GAAP."

69. On May 3, 2017, CBL issued a release entitled "CBL & Associates Properties Reports Results for First Quarter 2017." In the release, CBL provided its 1Q17 financial results, including the following (in thousands):

REVENUES:

| | |
|---|---|
| Tenant reimbursements | $67,291 |
| Total revenues | $238,013 |
| Net income attributable to common shareholders | $22,892 |

70. On May 10, 2017, CBL filed its quarterly report on Form 10-Q for the three months ended March 31, 2017 with the SEC. The 1Q17 Form 10-Q was signed by defendant Khaleel and contained Sarbanes-Oxley certifications signed by defendants Khaleel and S. Lebovitz, which certified that they had reviewed the Form 10-Q and it contained no materially untrue statements or omissions, fairly represented in all material respects the financial condition of CBL, was accurate in all material respects, and disclosed any material changes to the Company's internal control over financial reporting.

71. The 1Q17 Form 10-Q repeated the financial results provided in the 1Q17 press release. The 1Q17 Form 10-Q also stated that "[r]ental income and tenant reimbursements from

tenant leases provide the majority of revenues from all segments." The 1Q17 Form 10-Q also stated that "[w]e are currently involved in certain litigation that arises in the ordinary course of business, most of which is expected to be covered by liability insurance. Based on current expectations, such matters, both individually and in the aggregate, are not expected to have a material adverse effect on our liquidity, results of operations, business or financial condition." The 1Q17 Form 10-Q also represented that the Company's financial statements had "been prepared in accordance with GAAP."

72.     On August 3, 2017, CBL issued a release entitled "CBL & Associates Properties Reports Results for Second Quarter 2017." In the release, CBL provided its 2Q17 financial results, including the following (in thousands):

REVENUES:
| | |
|---|---|
| Tenant reimbursements | $62,231 |
| Total revenues | $229,233 |
| Net income attributable to common shareholders | $30,173 |

73.     On August 9, 2017, CBL filed its quarterly report on Form 10-Q for the three months ended June 30, 2017 with the SEC. The 2Q17 Form 10-Q was signed by defendant Khaleel and contained Sarbanes-Oxley certifications signed by defendants Khaleel and S. Lebovitz, which certified that they had reviewed the Form 10-Q and it contained no materially untrue statements or omissions, fairly represented in all material respects the financial condition of CBL, was accurate in all material respects, and disclosed any material changes to the Company's internal control over financial reporting.

74.     The 2Q17 Form 10-Q repeated the financial results provided in the 2Q17 press release. The 2Q17 Form 10-Q also stated that "[r]ental income and tenant reimbursements from tenant leases provide the majority of revenues from all segments." The 2Q17 Form 10-Q also stated that "[w]e are currently involved in certain litigation that arises in the ordinary course of

business, most of which is expected to be covered by liability insurance. Based on current expectations, such matters, both individually and in the aggregate, are not expected to have a material adverse effect on our liquidity, results of operations, business or financial condition." The 2Q17 Form 10-Q also represented that the Company's financial statements had "been prepared in accordance with GAAP."

75. On November 2, 2017, CBL issued a release entitled "CBL Properties Reports Results for Third Quarter 2017." In the release, CBL provided its 3Q17 financial results, including the following (in thousands):

REVENUES:

| | |
|---|---|
| Tenant reimbursements | $63,055 |
| Total revenues | $224,650 |
| Net income (loss) attributable to common shareholders | $(2,258) |

76. On November 8, 2017, CBL filed its quarterly report on Form 10-Q for the three months ended September 30, 2017 with the SEC. The 3Q17 Form 10-Q was signed by defendant Khaleel and contained Sarbanes-Oxley certifications signed by defendants Khaleel and S. Lebovitz, which certified that they had reviewed the Form 10-Q and it contained no materially untrue statements or omissions, fairly represented in all material respects the financial condition of CBL, was accurate in all material respects, and disclosed any material changes to the Company's internal control over financial reporting.

77. The 3Q17 Form 10-Q repeated the financial results provided in the 3Q17 press release. The 3Q17 Form 10-Q also stated that "[r]ental income and tenant reimbursements from tenant leases provide the majority of revenues from all segments." The 3Q17 Form 10-Q also stated that "[w]e are currently involved in certain litigation that arises in the ordinary course of business, most of which is expected to be covered by liability insurance. Based on current expectations, such matters, both individually and in the aggregate, are not expected to have a

material adverse effect on our liquidity, results of operations, business or financial condition." The 3Q17 Form 10-Q also represented that the Company's financial statements had "been prepared in accordance with GAAP."

78.    On February 8, 2018, CBL issued a release entitled "CBL Properties Reports Results for Fourth Quarter and Full-Year 2017."  In the release, CBL provided its 4Q17 financial results, including the following (in thousands):

REVENUES:
| | |
|---|---|
| Tenant reimbursements | $61,975 |
| Total revenues | $235,356 |
| Net income attributable to common shareholders | $25,241 |

79.    On March 1, 2018, CBL filed its annual report on Form 10-K for the year ended December 31, 2017 with the SEC.  The FY17 Form 10-K was signed by defendants C. Lebovitz, S. Lebovitz, Khaleel and Chapman.   The FY17 Form 10-K contained Sarbanes-Oxley certifications signed by defendants Khaleel and S. Lebovitz, which certified that they had reviewed the Form 10-K and it contained no materially untrue statements or omissions, fairly represented in all material respects the financial condition of CBL, was accurate in all material respects, and disclosed any material changes to the Company's internal control over financial reporting.

80.    The FY17 Form 10-K repeated the Company's financial results provided in the 4Q17 press release.  The FY17 Form 10-K also stated that "[w]e receive reimbursements from tenants for real estate taxes, insurance, [common area maintenance], and other recoverable operating expenses as provided in the lease agreements.  Tenant reimbursements are recognized as revenue in the period the related operating expenses are incurred."  The FY17 Form 10-K also stated that "[w]e are currently involved in certain litigation that arises in the ordinary course of business, most of which is expected to be covered by liability insurance.  Based on current expectations, such matters, both individually and in the aggregate, are not expected to have a

material adverse effect on our liquidity, results of operations, business or financial condition." The FY17 Form 10-K also represented that the Company's financial statements had "been prepared in accordance with GAAP."

81.     On April 26, 2018, CBL issued a release entitled "CBL Properties Reports Results for First Quarter 2018." In the release, CBL provided its 1Q18 financial results, including the following (in thousands):

REVENUES:

| | |
|---|---|
| Tenant reimbursements | $60,613 |
| Total revenues | $220,200 |
| Net income (loss) attributable to common shareholders | $(10,320) |

82.     On May 10, 2018, CBL filed its quarterly report on Form 10-Q for the three months ended March 31, 2017 with the SEC. The 1Q18 Form 10-Q was signed by defendant Khaleel and contained Sarbanes-Oxley certifications signed by defendants Khaleel and S. Lebovitz, which certified that they had reviewed the Form 10-Q and it contained no materially untrue statements or omissions, fairly represented in all material respects the financial condition of CBL, was accurate in all material respects, and disclosed any material changes to the Company's internal control over financial reporting.

83.     The 1Q18 Form 10-Q repeated the financial results provided in the 1Q18 press release. The 1Q18 Form 10-Q also stated that the "Company receives reimbursements from tenants for real estate taxes, insurance, [common area maintenance] and other recoverable operating expenses as provided in the lease agreements. Tenant reimbursements are recognized when earned in accordance with the tenant lease agreements." The 1Q18 Form 10-Q also stated that "[w]e are currently involved in certain litigation that arises in the ordinary course of business, most of which is expected to be covered by liability insurance. Based on current expectations, such matters, both individually and in the aggregate, are not expected to have a material adverse

effect on our liquidity, results of operations, business or financial condition." The 1Q18 Form 10-Q also represented that the Company's financial statements had "been prepared in accordance with GAAP."

84.     On August 1, 2018, CBL issued a release entitled "CBL Properties Reports Results for Second Quarter 2018." In the release, CBL provided its 2Q18 financial results, including the following (in thousands):

REVENUES:

| | |
|---|---|
| Tenant reimbursements | $56,614 |
| Total revenues | $214,598 |
| Net income (loss) attributable to common shareholders | $(35,020) |

85.     On August 9, 2018, CBL filed its quarterly report on Form 10-Q for the three months ended June 30, 2018 with the SEC. The 2Q18 Form 10-Q was signed by defendant Khaleel and contained Sarbanes-Oxley certifications signed by defendants Khaleel and S. Lebovitz, which certified that they had reviewed the Form 10-Q and it contained no materially untrue statements or omissions, fairly represented in all material respects the financial condition of CBL, was accurate in all material respects, and disclosed any material changes to the Company's internal control over financial reporting.

86.     The 2Q18 Form 10-Q repeated the financial results provided in the 2Q18 press release. The 2Q18 Form 10-Q also stated that the "Company receives reimbursements from tenants for real estate taxes, insurance, [common area maintenance] and other recoverable operating expenses as provided in the lease agreements. Tenant reimbursements are recognized when earned in accordance with the tenant lease agreements." The 2Q18 Form 10-Q also stated that "[w]e are currently involved in certain litigation that arises in the ordinary course of business, most of which is expected to be covered by liability insurance. Based on current expectations, such matters, both individually and in the aggregate, are not expected to have a material adverse

effect on our liquidity, results of operations, business or financial condition." The 2Q18 Form 10-Q also represented that the Company's financial statements had "been prepared in accordance with GAAP."

87.     On October 29, 2018, CBL issued a release entitled "CBL Properties Reports Results for Third Quarter 2018 and Declares Common and Preferred Stock Dividends." In the release, CBL provided its 3Q18 financial results, including the following (in thousands):

REVENUES:

| | |
|---|---|
| Tenant reimbursements | $55,374 |
| Total revenues | $206,878 |
| Net income (loss) attributable to common shareholders | $(12,590) |

88.     On November 9, 2018, CBL filed its quarterly report on Form 10-Q for the three months ended September 30, 2018 with the SEC. The 3Q18 Form 10-Q was signed by defendant Khaleel and contained Sarbanes-Oxley certifications signed by defendants Khaleel and S. Lebovitz, which certified that they had reviewed the Form 10-Q and it contained no materially untrue statements or omissions, fairly represented in all material respects the financial condition of CBL, was accurate in all material respects, and disclosed any material changes to the Company's internal control over financial reporting.

89.     The 3Q18 Form 10-Q repeated the financial results provided in the 3Q18 press release. The 3Q18 Form 10-Q also stated that the "Company receives reimbursements from tenants for real estate taxes, insurance, [common area maintenance] and other recoverable operating expenses as provided in the lease agreements. Tenant reimbursements are recognized when earned in accordance with tenant lease agreements." The 3Q18 Form 10-Q also stated that "[w]e are currently involved in certain litigation that arises in the ordinary course of business, most of which is expected to be covered by liability insurance. Based on current expectations, such matters, both individually and in the aggregate, are not expected to have a material adverse effect

on our liquidity, results of operations, business or financial condition." The 3Q18 Form 10-Q also represented that the Company's financial statements had "been prepared in accordance with GAAP."

90. On February 7, 2019, CBL issued a release entitled "CBL & Associates Properties Reports Results for Fourth Quarter and Full-Year 2018." In the release, CBL provided its 4Q18 financial results, including the following (in thousands):

REVENUES:

| | |
|---|---|
| Tenant reimbursements | $44,712 |
| Total revenues | $216,881 |
| Net income (loss) attributable to common shareholders | $(67,027) |

91. On March 1, 2019, CBL filed its annual report on Form 10-K for the year ended December 31, 2018 with the SEC. The FY18 Form 10-K was signed by defendants C. Lebovitz, S. Lebovitz, Chapman and Khaleel. The FY18 Form 10-K contained Sarbanes-Oxley certifications signed by defendants Khaleel and S. Lebovitz, which certified that they had reviewed the Form 10-K and it contained no materially untrue statements or omissions, fairly represented in all material respects the financial condition of CBL, was accurate in all material respects, and disclosed any material changes to the Company's internal control over financial reporting.

92. The FY18 Form 10-K repeated the Company's financial results provided in the 4Q18 press release. The FY18 Form 10-K also stated that "[w]e receive reimbursements from tenants for real estate taxes, insurance, [common area maintenance], and other recoverable operating expenses as provided in the lease agreements. Tenant reimbursements are recognized as revenue in the period the related operating expenses are incurred." The FY18 Form 10-K also stated that "[w]e are currently involved in certain other litigation that arises in the ordinary course of business, most of which is expected to be covered by liability insurance. Based on current expectations, such matters, both individually and in the aggregate, are not expected to have a

material adverse effect on our liquidity, results of operations, business or financial condition." The FY18 Form 10-K also represented that the Company's financial statements had "been prepared in accordance with GAAP."

93. The FY18 Form 10-K also belatedly discussed the RICO Class Action, but dismissed the allegations as "without merit" and claimed the case was unlikely to result in any losses for the Company. The FY18 Form 10-K stated in pertinent part:

> On March 16, 2016, Wave Lengths Hair Salons of Florida, Inc. d/b/a Salon Adrian filed a putative class action in the United States District Court for the Middle District of Florida (the "Court") for unspecified monetary damages as well as costs and attorneys' fees, based on allegations that the Company and certain affiliated entities overcharged tenants at bulk metered malls for electricity. On January 7, 2019, the Court partially granted the plaintiff's motion for class certification of a nationwide RICO class and a Florida RICO and FDUTPA class. *We believe this lawsuit is without merit and are defending ourselves vigorously*. On January 22, 2019, we filed a petition seeking interlocutory review of the Court's class certification order; that petition is still pending as of the date of this report. On January 23, 2019, the Court set this matter for the trial term starting on April 1, 2019. *We have not recorded an accrual relating to this matter at this time as a loss has not been determined to be probable. Further, we do not have sufficient information to reasonably estimate the amount or range of reasonably possible loss at this time*. However, litigation is uncertain and an adverse judgment in this case could have a material adverse effect on our financial condition and results of operations. This matter is not covered by insurance.

94. While revealing the existence of the litigation, defendants' discussion of the RICO Class Action was itself materially misleading because it falsely denied the lawsuit's allegations of wrongdoing and claimed that a loss was not "probable." In fact, the lawsuit accurately detailed defendants' misconduct, CBL's summary judgment motion had been denied, a class had been certified, and a material loss to the Company was likely. Further, CBL had estimated "the amount or range of reasonably possible loss," and therefore an accrual was required to be taken.

95. The statements referenced in ¶¶30-94 above were materially false and/or misleading when made because they failed to disclose the following adverse facts pertaining to the

Company's business, operations and financial condition, which were known to or recklessly disregarded by defendants:

(a)     that, since at least 2006, CBL and its executives had engaged in a fraudulent scheme to overcharge the Company's tenants for at least 190 million kWh of electricity;

(b)     that CBL did not receive reimbursements from tenants for electricity costs as provided in the lease agreements, but rather, in violation of its lease agreements and the laws of numerous states, CBL was engaged in a racketeering conspiracy to inflate the electricity costs charged to its tenants in order to increase its own revenues;

(c)     that, as a result of (a) and (b) above, CBL's revenues, tenant reimbursements and NOI results, as reported to investors, had been materially artificially inflated by tens of millions of dollars in illicit proceeds;

(d)     that defendants' perpetration of the fraudulent overbilling scheme had exposed CBL to material legal liabilities and reputational damage;

(e)     that the RICO Class Action subjected the Company to tens of millions of dollars in settlement and/or judgment costs, was not covered by CBL's liability insurance, and was therefore likely to have a material adverse effect on CBL's liquidity, results of operations, business or financial condition; and

(f)     that CBL's periodic financial reports were not prepared in accordance with GAAP and applicable accounting principles because, for example, they failed to account for loss contingencies stemming from the RICO Class Action that were probable and subject to reasonable estimation. *See, e.g.*, ASC ¶450-20 ("Loss Contingencies").   In addition, Item 303 of SEC Regulation S-K, 17 C.F.R. §229.303(a)(3)(ii) ("Item 303"), required the FY14 Form 10-K, FY15 Form 10-K, FY16 Form 10-K, FY17 Form 10-K and FY18 Form 10-K to "[d]escribe any known trends or uncertainties that have had or that the registrant reasonably expects will have a material

favorable or unfavorable impact on net sales or revenues or income from continuing operations." Defendants' failure to disclose CBL's fraudulent overbilling scheme and the likely impact of the RICO Class Action (with respect to the FY16 Form 10-K onward) was a violation of Item 303 because it was a known trend and uncertainty that was likely to, and did, have a material unfavorable impact on the Company's revenues and income from continuing operations.

96.     As a result of defendants' partial yet misleading disclosure regarding the RICO Class Action, the price of CBL common stock dropped $0.16 per share, or nearly 8%, on volume of approximately 4.5 million shares. However, because defendants had failed to disclose the truth about their scheme to systematically overcharge tenants for electricity and the likely impact of the RICO Class Action, the price of CBL securities remained artificially inflated.

97.     Then, on March 26, 2019, CBL issued a press release announcing that it had settled the RICO Class Action, which omitted to mention the size of the settlement:

> CBL PROPERTIES ANNOUNCES PROPOSED SETTLEMENT OF CLASS ACTION LAWSUIT
>
> . . . CBL Properties today announced that it has approved the structure of a settlement of a class action lawsuit as outlined below.
>
> Background
>
> On March 16, 2016, Wave Lengths Hair Salons of Florida, Inc. d/b/a Salon Adrian filed a putative class action in the United States Court for the Middle District of Florida seeking unspecified monetary damages, as well as costs and attorneys' fees, based on allegations that CBL and certain affiliated entities overcharged tenants at bulk metered malls for electricity.
>
> In recent months, the pace of the case accelerated to a considerable degree. On January 7, 2019, the Court partially granted the plaintiff's motion for class certification of a nationwide RICO class and a Florida RICO and FDUTPA class. On January 22, 2019, CBL filed a petition with the United States Court of Appeals for the Eleventh Circuit seeking permission to appeal the Court's class certification order, and on March 4, 2019, that petition was denied. On March 11, 2019, the Court set the trial date for April 2, 2019. On March 15, 2019, following mediation proceedings, a proposed structure of a settlement was approved by representatives of the parties.

CBL denies all allegations of wrongdoing and asserts that its actions have at all times been lawful and proper. However, given the class certification, the accelerated trial schedule, the inherent risk of any trial, and the potential cost of an adverse resolution of the litigation, the Company believes that mediation was the prudent path. Furthermore, it maintains that the proposed settlement is in CBL's best interest and in the best interests of its shareholders.

Proposed Settlement Structure

**Details of the proposed settlement structure and anticipated accounting impact are available on CBL's Form 8-K filed with the SEC today**.

As part of the proposed settlement, CBL will suspend payment of its common dividend for two quarters: the quarter ended June 30, 2019 (payable in third quarter 2019), and the quarter ended September 30, 2019 (payable in fourth quarter 2019). The suspension of the dividend for two quarters will preserve approximately $26.0 million in cash at the current quarterly dividend rate. Based on the current projection of taxable income for 2019, which includes the impact of the settlement, CBL believes it will satisfy all required REIT distributions for the 2019 taxable year. The proposed settlement does not restrict CBL's payment of common dividends thereafter. CBL anticipates resuming a quarterly distribution with its dividend payable in January 2020 (subject to Board approval) in an amount to be determined at that time based on updated taxable income projections for 2020. CBL's common dividend previously declared on February 25, 2019, and payable on April 16, 2019, will be paid as declared.

98. To learn of the shocking size of the settlement, investors had to seek out the

Company's Form 8-K filed with the SEC the same day, which revealed in pertinent part:

**Under the terms of the proposed settlement, we are to set aside a common fund with a monetary and non-monetary value of $90 million (the "Common Fund") to be disbursed to class members in accordance with a formula to be agreed upon by the parties that is based upon aggregate damages of $60 million**. . . .

Under the terms of the proposed settlement, we will not pay any dividends to holders of our common shares payable in the third and fourth quarters of 2019. The settlement does not restrict our ability to declare dividends payable in 2020 or in subsequent years.

99. On this news, the price of CBL common stock dropped $0.47 per share, or roughly

25%, on trading volume of approximately 11.7 million shares. CBL Series D preferred shares

dropped 7%, or $0.74 per share, on volume of 576,300 shares, and CBL Series E preferred shares

dropped $0.69 per share in two days on volume of 214,280 shares.

100.   As a result of defendants' wrongful acts and omissions, plaintiff and the Class purchased CBL securities at artificially inflated prices and suffered significant losses when the relevant truth was revealed in part over time.

## ADDITIONAL SCIENTER ALLEGATIONS

101.   As alleged herein, defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents and actions intended to manipulate the market price of CBL securities as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding CBL, their control over, and/or receipt or modification of, CBL's allegedly materially misleading misstatements, and/or their associations with the Company that made them privy to confidential proprietary information concerning CBL, participated in the fraudulent scheme alleged herein.

102.   The adverse developments at issue also impacted the Company's most important revenue streams and involved litigation that materially threatened the Company's ability to pay its dividends.   Furthermore, the Company's mall operations were overseen by the Individual Defendants as the Company's top executives during the Class Period; their involvement included hands-on oversight of the Company's mall operations.  As such, the Individual Defendants knew or were reckless in not knowing of the undisclosed facts detailed herein.

## LOSS CAUSATION/ECONOMIC LOSS

103.   During the Class Period, as detailed herein, defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the prices of CBL securities and operated as a fraud or deceit on purchasers of CBL securities.  When the truth about CBL's

misconduct was revealed over time, the value of the Company's securities declined precipitously as the prior artificial inflation no longer propped up the securities' prices. The declines in the prices of CBL securities were the direct result of the nature and extent of defendants' fraud finally being revealed to investors and the market. The timing and magnitude of the price declines negate any inference that the losses suffered by plaintiff and other members of the Class were caused by changed market conditions, macroeconomic or industry factors or company-specific facts unrelated to the defendants' fraudulent conduct. The economic loss, *i.e.*, damages, suffered by plaintiff and other Class members was a direct result of defendants' fraudulent scheme to artificially inflate the prices of the Company's securities and the subsequent significant decline in the value of the Company's securities when defendants' prior misrepresentations and other fraudulent conduct were revealed.

104.  At all relevant times, defendants' materially false and misleading statements or omissions alleged herein directly or proximately caused the damages suffered by plaintiff and the other Class members. Those statements were materially false and misleading through their failure to disclose a true and accurate picture of CBL's business, operations and financial condition, as alleged herein. Throughout the Class Period, defendants issued materially false and misleading statements and omitted material facts necessary to make defendants' statements not false or misleading, causing the prices of CBL securities to be artificially inflated. Plaintiff and other Class members purchased CBL securities at those artificially inflated prices, causing them to suffer damages as complained of herein when the relevant truth was revealed.

## APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD-ON-THE-MARKET DOCTRINE

105.  At all relevant times, the markets for CBL securities were efficient for the following reasons, among others:

(a)    CBL common and preferred shares met the requirements for listing and were listed and actively traded on the NYSE, a highly efficient and automated market;

(b)    according to the Company's Form 10-Q, filed on May 10, 2019, the Company had over 173 million shares of common stock outstanding as of May 7, 2019, demonstrating a very active and broad market for CBL securities;

(c)    as a regulated issuer, CBL filed periodic public reports with the SEC;

(d)    CBL regularly communicated with public investors via established market communication mechanisms, including regular the dissemination of press releases on national circuits of major newswire services, the Internet and other wide-ranging public disclosures; and

(e)    unexpected material news about CBL was rapidly reflected in and incorporated into the Company's securities prices during the Class Period.

106.    As a result of the foregoing, the market for CBL securities promptly digested current information regarding CBL from publicly available sources and reflected such information in CBL's securities prices.  Under these circumstances, all purchasers of CBL securities during the Class Period suffered similar injury through their purchase of CBL securities at artificially inflated prices, and a presumption of reliance applies.

## CLASS ACTION ALLEGATIONS

107.    This is a class action on behalf of all purchasers of CBL securities during the Class Period who were damaged thereby (the "Class").  Excluded from the Class are defendants and their families, the officers and directors of the Company, at all relevant times, members of their immediate families, and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

108.    Common questions of law and fact predominate and include: (a) whether defendants violated the 1934 Act; (b) whether defendants omitted and/or misrepresented material

facts; (c) whether defendants knew or recklessly disregarded that their statements were false; (d) whether the prices of CBL securities were artificially inflated during the Class Period; and (e) the extent of and appropriate measure of damages.

109.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, shares of CBL common and preferred stock were actively traded on the NYSE.  Upon information and belief, these shares are held by thousands of individuals located geographically throughout the country.

110.    Plaintiff's claims are typical of those of the Class.  Prosecution of individual actions would create a risk of inconsistent adjudications.  Plaintiff will adequately protect the interests of the Class.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

### COUNT I

### Violations of §10(b) of the 1934 Act and Rule 10b-5
### Against All Defendants

111.    Plaintiff incorporates ¶¶1-110 by reference.

112.    During the Class Period, defendant CBL and the Individual Defendants disseminated or approved the false statements specified above in ¶¶30-94, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

113.    Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

(a)    employed devices, schemes and artifices to defraud;

(b)    made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)     engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of CBL securities during the Class Period.

114.    Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for CBL securities and suffered losses when the relevant truth was disclosed.  Plaintiff and the Class would not have purchased CBL securities at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by these defendants' misleading statements.

## COUNT II

### Violations of §20(a) of the 1934 Act
### Against the Individual Defendants

115.    Plaintiff incorporates ¶¶1-114 by reference.

116.    The Individual Defendants acted as controlling persons of CBL within the meaning of §20(a) of the 1934 Act.  By reason of their positions with the Company, and their ownership of CBL securities, the Individual Defendants had the power and authority to, and did, cause CBL to engage in the wrongful conduct complained of herein.  By reason of such conduct, these defendants are liable pursuant to §20(a) of the 1934 Act.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for relief and judgment as follows:

A.      Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a Class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B.      Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C. Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D. Awarding such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

DATED: July 2, 2019

ROBBINS GELLER RUDMAN
  & DOWD LLP
CHRISTOPHER M. WOOD (#032977)

*s/ Christopher M. Wood*
CHRISTOPHER M. WOOD

414 Union Street, Suite 900
Nashville, TN 37219
Telephone: 615/244-2203
615/252-3798 (fax)
cwood@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
BRIAN E. COCHRAN
200 South Wacker Drive, 31st Floor
Chicago, IL 60606
Telephone: 312/674-4674
312/674-4676 (fax)
bcochran@rgrdlaw.com

JOHNSON FISTEL, LLP
MICHAEL I. FISTEL JR.
40 Powder Springs Street
Marietta, GA 30064
Telephone: 470/632-6000
770/200-3101 (fax)
michaelf@johnsonfistel.com

Attorneys for Plaintiff

I:\Admin\CptDraft\Securities\Cpt CBL.docx

# CERTIFICATION OF PLAINTIFF PURSUANT
## TO THE FEDERAL SECURITIES LAWS

I, ALBERTO MERELLES, declare the following as to the claims asserted, or to be asserted, under the federal securities laws:

1. I have reviewed the complaint with my counsel and authorize its filing.

2. I did not acquire the securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action or any other litigation under the federal securities laws.

3. I am willing to serve as a representative party on behalf of the class, including testifying at deposition or trial, if necessary.

4. I made the following transactions during the Class Period in the securities that are the subject of this action.

**Acquisitions:**

| Date Acquired | Number of Shares Acquired | Acquisition Price Per Share |
|---|---|---|
| 7/15/2015 | 500 | 16.43 |
| 7/31/2015 | 600 | 16.30 |

**Sales:**

| Date Sold | Number of Shares Sold | Selling Price Per Share |
|---|---|---|
| | | |

5. I will not accept any payment for serving as a representative party beyond my pro-rata share of any recovery, except reasonable costs and expenses – such as lost wages and travel expenses – directly related to the class representation, as ordered or approved by the Court pursuant to law.

6.     I have not sought to serve or served as a representative party for a class in an action under the federal securities laws within the past three years, except if detailed below:

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 1st  day of July, 2019.

ALBERTO MERELLES